POSNER, Circuit Judge,
dissenting.
The plaintiff, a former deputy sheriff of DuPage County, Illinois, charges the sheriff with having filed a complaint with the Sheriffs Merit Commission that led the Commission to fire the plaintiff for an offense that was almost always less serious, rarely as serious, and never more serious than offenses committed by tóale deputy sheriffs that elicited either no punishment or a slap on the wrist. If the plaintiff could prove these allegations she would be well on her way to proving sex discrimination in violation of Title VII of the Civil Rights Act of -1964. She was prevented from proving them by án arbitrary discovery cutoff date of January 1, 2006, imposed by the district judge. (Other allegations that she made were properly rejected by the district court, however.)
She was fired for violating two departmental . regulations: “Conduct Unbecoming,” and “Wearing of the Uniform” when not on duty. Knowing that her partner in a real estate brokerage business had lent money that.had not been repaid when due, she went to the borrower’s home dressed at least .partially in uniform (a potentially significant qualification ignored in the majority opinion, as by the district judge— one would like to know whether she was wearing enough of her deputy sheriffs uniform to appear to be. on duty). Upon learning that he was not at home, she left a business card in the names of “Susan A. McKinley” and “Team in Focus, DC International,” names she uses in her off-duty business activities. She had no financial interest in the repayment of the loan, which was unrelated to- the partnership.
The Commission’s decision to fire her was based not .just on the incident just described but also on her failing to notify the sheriffs department that she had engaged in off-duty business activity while in uniform, though this may have been a common practice of other deputy ■ sheriffs who engage, as a .number appear to do, in off-duty business activities.: The majority opinion’s description of her wearing her uniform (or part of -it)„ off duty as “the improper projection of- coercive police authority” and “coercive misuse of her uniform” is, however, unsubstantiated. The borrower whom she tried to visit was not at home, and so he didn’t see her in uniform. His father opened the door to her and told her that his son wasn’t at home, but' he has not complained that he felt intimidated by her visiting in uniform. *978 (For all we know, father and son knew she was a police officer and expected her to be wearing a uniform.) If a police officer drops into Starbucks in uniform, the uniform does not intimidate the barista. So far as appears, no one has complained of being intimidated by the plaintiff. There is no suggestion that she ever revisited the borrower’s home.
She’d been hired by the sheriffs department in 1998; she filed this suit in 2010. Becadse of the January 1, 2006, discovery cut-off date, she was unable to conduct discovery regarding a series of suspected offenses by male sheriffs deputies committed between her hiring date and the end of 2005. She listed 21 suspected offenses that she believed had been committed by male deputies during that period, including a uniformed officer’s having sex in his squad car with the wife of a man whom the officer had-arrested for domestic battery (she was the victim of the battery); an officer’s dressing his girlfriend in his uniform and parading her in a bar, where the couple was seen by other officers who had been summoned because a fight had broken out; an officer who groped and harassed a teenage girl whose mother complained to no avail, and who, while in uniform, refused to pay the full price of or the tax on an item on the ground that he was a sheriffs deputy, and who hired a prostitute for himself and his wife, refused to pay her, and arrested her when she kept insisting on being paid; an officer, again in uniform, who demanded a “police price discount” and launched an investigation to determine whether a hot dog that had made him ill had been deliberately tampered with because he was an officer; an officer arrested for driving under the influence; an officer who in and out of uniform repeatedly beat up his girlfriends and was arrested twice for driving under the influence and on one of those occasions was found to have cocaine in his car; an officer who while in uniform frequented a massage parlor suspected of being a brothel and who when he discovered that the sheriffs office was beginning to investigate the parlor is believed to have tipped it off; an officer repeatedly accused of sexual harassment and caught viewing pornography on a county computer while on duty and in uniform; another officer who was the subject of repeated complaints of sexual harassment; an officer who dated a female deputy sheriff who accused him of having broken into her apartment after they broke up and'having on that occasion masturbated on the pillow of her bed, all while in uniform; an officer who while in uniform hired an ineligible inmate who happened to be a friend of the officer’s family to operate the commissary in the sheriffs office; an officer who was caught on a videotape stealing from a record store — in uniform.
I’ll spare the reader the other 10 alleged incidents. In none of the 21 incidents were the perpetrators fired and many were later promoted. Yet every one of the incidents, if they were as described in the plaintiffs allegations — and it’s hard to imagine them as sheer fabrications — were either as serious as, or (more often) considerably more serious than, the plaintiffs visit to the home of her partner’s debtor. Indeed, since the person she was trying to visit was not at home, he can’t have been intimidated by hér uniform (unless perhaps his father was — of which there is no indication). Although the other’ ground of her being fired was wearing her uniform while engaged in business activities, there is no indication that her wearing the uniform ever intimidated anyone.
I don’t see how the judges in the majority can say with straight faces that the plaintiff “did not identify any similarly situated male employee who received more favorable treatment.” She identified more *979 than. 21 such favored males (for some of the incidents involved more than one officer). Granted, these were accusations (though given what we know of police behavior, not unbelievable ones), but she was given no opportunity to prove them. I also don’t see the relevance of the majority opinion’s saying, about the deputy sheriff who hired an ineligible inmate to operate the sheriffs office commissary, that “no charges were ever brought for this misconduct” — as if failure to bring charges excused, rather than exacerbated, the misconduct.
The plaintiffs lawyer was prevented from trying to establish the truth of the accusations against the male deputy sheriffs because he was barred by the January 1, 2006, cut-off date from conducting any discovery relating to the incidents in question, all of which had occurred before that date. He wasn’t even allowed to conduct discovery of just the most egregious violations by the male deputy sheriffs, violations that despite their egregiousness had led to no one’s being fired and few being punished in any way. At oral argument I asked the sheriffs lawyer whether there had been any changes in the department’s disciplinary. standards or procedures, effective at the beginning of 2006, that might have made the earlier incidents ancient history; for had the sheriffs office cleaned up its act by January 1 of that year the discovery limit would have been defensible. He replied that there had been no such changes. The majority opinion misses this point when it says that the cut-off date “served to hone in on possible comparators [awful word] who were reasonably likely to have been subject to the same rules, supervisors, and decision-making process as” the plaintiff. There is, to repeat, no evidence of a change of rules, supervisors, or the department’s decision-making process in 2006.
The majority opinion,approves the January 1, 2006, cutoff date for discovery but gives no, reason for its approval, though the logical cut-off date would have been when the plaintiff was hired in 1998. The cut-off date imposed by the district judge and now ratified by this court killed the plaintiffs case because she was able to identify only four incidents of misconduct by male sheriffs deputies in the four years after the cut-off date, none of which was comparable to her misconduct, compared to the 21 incidents that she had learned about that had occurred in the eight preceding years (1998-2006). Those incidents, summarized earlier in this opinion, involved worse misconduct than hers — indeed there’s no indication that the plaintiffs misconduct caused harm to anyone or even minor embarrassment to the sheriffs department.
Had the department cleaned up its act by 2006, the judge would have been right to exclude evidence pertaining to earlier misconduct, because the incident that appears to have triggered the plaintiffs discharge — the visit to the home of the person who owed her partner money — came later. But, to repeat, the sheriffs lawyer acknowledged that nothing had changed in 2006, and so there was no reason to ignore the earlier-misconduct, which was the critical evidence of discriminatory treatment of the plaintiff. The majority opinion concedes that the “January 1, 2006 [cut-off] date isn’t keyed to any specific facts in the case.” Very odd is the further statement that granting the plaintiffs motion to reconsider the cut-off date “threatened to impose a massive new burden on the defendants with only a few weeks remaining until the discovery cutoff.” If the department needed more time, the judge could have extended the cut-off date. In the unlikely event that discovery regarding all 21 incidents would have placed a crushing burden on the sheriffs, office (more likely *980 it would have led the office to clean out the Augean stables at last), the judge could have limited the discovery, at least to begin with, to the most serious of the 21 incidents.
One of the pre-2006 incidents that the plaintiff wanted to explore involved the officer who had dressed his girlfriend in his uniform and paraded her in a bar. His only post-cut-off offense (2008), or at least the only offense of which he was accused, was making personal visits to a female detainee in the county jail, in uniform of course. For this misconduct he was issued a written reprimand, even though the misconduct was styled “abuse of position.” It is hard to square his written reprimand with the plaintiffs being fired for a less serious offense, especially since he was a recidivist and she a first offender, who could, expect to be treated more leniently. As for the three other incidents of misbehavior by male deputy sheriffs after the 2006 .cut-off date, one led to a written reprimand, another to no disciplinary action, and the third to a mere admonition to the deputy sheriff to desist from repeating the infractions.
The arbitrary discovery cut-off date was the district court’s worst mistake, but there were two other serious mistakes as well, both ignored in the majority opinion. One was to base the cut-off date on annoyance at what the judge deemed abuses by the plaintiff’s lawyer — and there were a few, such as asking to see the personnel file of the sheriffs wife. But the proper response to those abuses would have been to order-the lawyer to shape up, and if necessary to fine him for his contumacy; the tight cut-off date arbitrarily punished his client..- Second, the judge refused to allow the lawyer to ask any questions intended-to elicit hearsay testimony. The lawyer wanted to ask members of the sheriffs department whether they’d heard mention of misconduct committed by other members. An answer to such a question would be hearsay. But as the district judge seems to have overlooked, the version of Fed.R.Civ.P. 26 in force during the district court proceedings permitted hearsay in discovery if it held reasonable prospects of leading to admissible evidence. See Fed.R.Civ.P. 26(b)(1) (the rule was changed effective December 1, 2015, but final judgment in- the district court in the present case had been entered on December 4, 2014, and anyway the new rule provides that “discovery need not be admissible in evidence to be discoverable”); Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 930 (7th Cir.2004); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Given the difficulty of discovering misconduct that does not give rise to a written report, the judge should have allowed inquiry into the knowledge possessed by witnesses concerning possible misconduct by sheriff’s deputies.
The combination of the arbitrary cut-off date and the discovery hearsay bar was fatal to a promising case of disparate treatment based on gender. And “promising” is an understatement. It is a virtual certainty that the plaintiff was disciplined far more harshly than male counterparts who engaged in far more egregious conduct — far more harshly because she’s a woman. The DuPage County Sheriffs Office is or at least was a boy’s club.
We should be reversing and remanding to permit further discovery, not affirming.